IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT RAZZANO and BARBARA RAZZANO<br><br>Plaintiffs,<br><br>v.<br><br>JOHN SARANDREA and THE NEW CASTLE AREA SCHOOL DISTRICT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil No. 17-1046<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Presently before the Court is Plaintiffs' motion to compel the testimony of Defendant John Sarandrea as well as the Solicitor for Defendant New Castle Area School District (the School District"). ECF No. 56. As explained below, during his deposition Mr. Sarandrea testified that he performed certain acts at the direction of the School District's Solicitor. Counsel for Mr. Sarandrea and the School District objected to further questioning of Mr. Sarandrea on the subject. Counsel similarly objected to questioning of the Solicitor at his deposition claiming attorney client privilege. Accordingly, Mr. Razzano filed a motion to compel testimony. The School District has filed a brief in opposition, to which Mr. Razzano has filed a reply. ECF Nos. 59 & 60. Mr. Sarandrea did not file a response to the motion. For the reasons stated below, the motion will be granted.

I.     BACKGROUND

The relevant facts are as follows. Plaintiff Robert Razzano was formerly employed by the New Castle Area School District as a Principal. In February 2014, allegations arose that Mr. Razzano had acted improperly towards one or more teachers, prompting the New Castle Area

School District Superintendent, Defendant John Sarandrea, to initiate an investigation. Shortly thereafter, Mr. Razzano met with Mr. Sarandrea to discuss the allegations. In March 2014, Mr. Razzano filed a Mandamus action in the Court of Common Pleas of Lawrence County seeking relief from certain aspects of the investigation. In April 2014, the parties entered into a confidential settlement of the matter. As a consequence of the settlement, Mr. Razzano voluntarily resigned from employment with the School District.

In April 2016, Mr. Razzano applied for employment at Kennedy Catholic High School. As part of the application process, Mr. Razzano, as well as his former employer, the School District, were required to complete and submit a "Commonwealth of Pennsylvania Sexual Misconduct/Abuse Disclosure Release" form, pursuant to the Act 168 of the Pennsylvania Public School Code (Act 168 Form"). The Act 168 Form requires a "Yes" or "No" checkmark response to the following questions relevant to the instant action:

> To the best of your knowledge, has Applicant ever[] [b]een the subject of an abuse or sexual misconduct investigation by an employer, state licensing agency, law enforcement agency or child protective services agency (unless the investigation resulted in a finding that the allegations were false)?
>
> To the best of your knowledge, has Applicant ever[] [b]een disciplined, discharged, non-renewed, asked to resign from employment, resigned from or otherwise separated from employment while allegations of abuse or sexual misconduct were pending or under investigation or due to adjudication or findings of abuse or sexual misconduct?

Mr. Sarandrea completed the Act 168 Form on behalf of the School District, and he answered "yes" to both of the above questions. As a result of Mr. Sarandrea's responses on the Act 168 Form, Kennedy Catholic High School declined to employ Mr. Razzano.

The terms "abuse" and "sexual misconduct" used in the Act 168 Form concern only conduct involving a student or a child. Mr. Razzano has never been the subject of an investigation

of alleged "abuse" or "sexual misconduct" involving a student or a child. In Mr. Sarandrea's Responses to Requests for Admission he denied that he knew that the terms "abuse" and "sexual misconduct" concern only conduct involving a student or a child, and did not mean abuse or misconduct directed towards adults. Sarandrea Resp. to Requests for Admission, Apr. 17, 2018, ¶ 2 (ECF No. 57-1).

In their Responses to Requests for Admission, Defendants admit that Mr. Sarandrea's "yes" response to the above-cited questions constitute a false official report. ECF No. 57-1, ¶¶ 5 & 8; School Dist. Resp. to Requests for Admission, Apr. 17, 2018, ¶¶ 5 & 8 (ECF No. 60-1). Defendants state that Mr. Sarandrea did not know that his response to the questions constituted a false official report at the time of his response. ECF No. 57-1, ¶¶ 5 & 8; ECF No. 60-1, ¶¶ 5 & 8. In a jointly-filed Amended Answer and Affirmative Defenses, Defendants stated:

> Since the portion of the Form containing the "Relevant Definitions" was not attached [to the Act 168 Form Sarandrea was completing], Sarandrea did not know that the terms "abuse" and/or or "sexual misconduct" were defined as "being directed toward or with a child or a student" at the time of his response. Therefore, Sarandrea did not know that his answers were false at the time of his response.

Am. Answer ¶ 21 (ECF No. 30).

At his deposition, Mr. Sarandrea answered questions regarding his completion of the Act 168 Form. John Sarandrea Dep., Aug. 28, 2018, ECF No. 57-2. He testified that he consulted with the School District's Solicitor, Charles Sapienza, in person in Mr. Sarandrea's office about the process of filling out the Form. Id. 72. Mr. Sarandrea had reached out to Attorney Sapienza and asked him to go over the Act 168 Form with him to "make sure we're doing it the right way. Sarandrea Dep. 72-73. Mr. Razzano's counsel asked Mr. Sarandrea, "What did you say and what did he say in that discussion?" Id. 73. Counsel for Mr. Sarandrea objected on the grounds of

3

attorney-client privilege. Id. At the time of Mr. Sarandrea's deposition both he and the School District were represented by the same counsel.

Following the objection, Mr. Sarandrea was asked about his understanding at the time he was completing the Act 168 Form:

> Q. As you and he sat there talking about this, did you understand that for Act 168 purposes, including for this form that you were asked to fill out, that the term sexual misconduct meant an act directed toward or with a child or student?
> A. Yes.
> Q. Did you understand that for purposes of Act 168 and this form, the term abuse meant conduct directed toward a child or student?
> A. I did.
> Q. As you and he sat there having this discussion, did you and he understand that Robert Razzano had never committed any act of misconduct of any kind nor any abuse toward a child or student?
> . . .
> A. I understand that.

Id. 74-75. Mr. Sarandrea was then handed the Act 168 Form he completed and submitted to Kennedy Catholic High School to review, and he was asked the following:

> Q. In response to the question about whether Mr. Razzano had ever been the subject of an abuse or sexual misconduct investigation, you wrote yes; is that correct?
> A. That's correct.
> Q. Why did you do that?
> A. I was advised by the solicitor to check yes.

Id. 76. At this point, counsel for Mr. Razzano asked opposing counsel if he would now be able to inquire into the specifics of the conversation between Mr. Sarandrea and Attorney Sapienza. However, defense counsel maintained his objection on the grounds of attorney client privilege. Id. 76-77.

Despite the objection, Mr. Sarandrea did provide additional information that was not objected to during his deposition. He was asked if he answered "yes" to the second question "knowing that the definition of abuse and sexual misconduct meant directed toward a child or

4

student." Id. 78. Mr. Sarandrea responded "Yes," but explicitly qualified his answer explaining: "We were uncomfortable with the word resignation and we were uncomfortable with the word investigation." Id.

He also provided information as to the thought process that went into completing the form when he responded to a question regarding the effect the "yes" answers would have on Mr. Razzano. Mr. Sarandrea testified that "the lens from which we were looking at this from[,] was one of protecting ourselves and the district." Id. 79. He again attempted an explanation as to why the questions were answered "Yes," explaining as follows:

> the lens that we looked at this from were based on the word investigation and based on the word resignation, and, quite frankly, we were concerned that if anything would happen, that we could be found sort of damned if you do and damned if you don't no matter which box we checked here.

Id. 80.

At Attorney Sapienza's deposition, he was directly asked about consultations he may have had with anyone with respect to the completion of the Act 168 Form:

> Q. Okay. Now, do you recall any instance in which an employee or representative of the New Castle School District has consulted with you regarding Act 168?
> A. No.

Charles Sapienza Dep. 7, Oct. 5, 2018, ECF No. 57-3. At the time of the deposition the School District and Mr. Sarandrea were represented by separate counsel, and neither counsel objected this question. Mr. Razzano's counsel then asked Attorney Sapienza specifically about discussions he may have had with Mr. Sarandrea: "just to specify -- obviously, I think your answer rules this out -- but you don't recall having any discussions with John Sarandrea concerning Act 168 or the form?" Id. Before Attorney Sapienza could answer, both defense counsel objected. Id. Mr. Razzano's counsel then restated his first question: "So, your prior

5

answer was you don't recall being consulted by any employees or representatives of the New Castle School District concerning Act 168?" Id. Even though Attorney Sapienza had already answered this question, both defense counsel objected. Id. 7-8. Finally, Mr. Razzano's counsel attempted to pose a hypothetical question, asking: "If you had been consulted by any client about how to complete an Act 168 form, would you advise that individual to fill out the form in a manner that is not consistent with their understanding of the facts?" Id. 8. Again defense counsel objected, and the parties agreed that further questioning would not be productive. The instant motion to compel followed.

## II. APPLICABLE LAW

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007), as amended (Oct. 12, 2007). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" Id. (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." Id. (citing Restatement (Third) of the Law Governing Lawyers § 70). "The privilege forbidding the discovery and admission of evidence relating to communications between attorney and client is intended to ensure that a client remains free from apprehension that consultations with a legal adviser will be disclosed." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (1994); see also Hunt v. Blackburn, 128 U.S. 464, 470 (1888). "The privilege encourages the client to reveal to the

lawyer confidences necessary for the lawyer to provide advice and representation." Rhone-Poulenc, 32 F.3d at 862. According to well established law

> The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *See In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir.1979) *citing United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950); *see also,* 8 Wigmore, *Evidence,* § 2292, at 554 (J. McNaughton rev.1961) (1st ed. 1904).

Rhone-Poulenc, 32 F.3d at 862. Because the attorney-client privilege constricts the truth-finding process, the privilege is to be construed narrowly. Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423 (3rd Cir.1991).

"[A]ny privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer." In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 124 (3d Cir. 1986). "Because a corporation can act only through its agents, a corporation's privilege consists of communications by corporate officials about corporate matters and their actions in the corporation." Id. at 124-125. Therefore, a "corporate official [] may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters." Id. at 125. The Bevill Court also recognized that "an individual officer may have an individual claim of attorney-client privilege with regard to communications with corporate counsel." Id., citing In re Citibank v. Andros, 666 F.2d 1192 (8th Cir.1981) and Diversified Industries, Inc. v. Meredith, 5732 F.2d 596 (8th Cir.

7

977) (corporate official seeking advice for himself personally from corporate counsel may retain the privilege).

### III. DISCUSSION

The Court agrees that Plaintiffs should be permitted to depose Mr. Sarandrea and Attorney Sapienza as to the substance of their communications regarding Mr. Sarandrea's completing the Act 168 Form. As explained below, the protected nature of the communications was waived when Mr. Sarandrea directly testified that he completed the Act 168 Form in the manner he did on the advice of counsel.

A "party 'can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation.'" Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc., 227 F.R.D. 382, 390 (W.D. Pa. 2005) (quoting Rhone-Poulenc, 32 F.3d at 863). Where "the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice." Rhone-Poulenc, 32 F.3d at 863.

In Martin-Marietta, the Court concluded that the deposition testimony of the representative for Plaintiff "implicated a defense of reliance on counsel advice" and "clearly put in issue" (i) the attorneys' understanding regarding Plaintiffs' duty, (ii) and "the role which attorney-client communications and advice of counsel played in the [Plaintiffs'] decision [to take the action it took] such that the Plaintiff has waived the attorney-client privilege with regard to such communications. . . ." Martin Marietta, 227 F.R.D. 396-97. Similarly, in this case Mr. Sarandrea implicated a defense of reliance on counsel advice by testifying that he completed the Act 168 Form on advice of counsel.

8

The School District argues that only the School Board had the power to waive the attorney-client privilege and that Mr. Sarandrea had no authority to waive the privilege. The School District does not address an implied waiver based on the deponent placing the attorney's advice at issue. Moreover, the School District concedes that Mr. Sarandrea's communications with the Solicitor were "made in order to obtain legal advice on behalf of the District, and any alleged advice offered by the District Solicitor would have been made for the best interest of the District, the client." Def. Br. Opp. 5. Mr. Sarandrea specifically testified that in discussing his completion of the Act 168 Form they were concerned about protecting the interests of the School District. Sarandrea Dep. 79. Mr. Sarandrea in essence testified as the representative of the School District and specifically testified about conduct that forms the basis of the claims asserted against both Mr. Sarandrea and the School District.

Moreover, Mr. Sarandrea provided details of the conversation indicating that he and the Solicitor considered and weighed how to respond appropriately. During his deposition Mr. Sarandrea explained that "[w]e were uncomfortable with the word resignation and we were uncomfortable with the word investigation." Sarandrea Dep. 78. A reasonable assumption from this testimony it that Mr. Sarandrea and Attorney Sapienza reviewed terms located in the Act 168 Form when discussing how to properly complete the Form.

Mr. Sarandrea's testimony continued along this line, as he specifically stated that "the lens from which we were looking at this from[,] was one of protecting ourselves and the district." <u>Id.</u> 79. Mr. Sarandrea reiterated the concerns he and Attorney Sapienza had once more, explaining the underlying decision process as follows:

> the lens that we looked at this from were based on the word investigation and based on the word resignation, and, quite frankly, we were concerned that if

9

>anything would happen, that we could be found sort of damned if you do and damned if you don't no matter which box we checked here.

Id. 80.

Mr. Razzano's counsel did not explore with Mr. Sarandrea what he meant by the concern over the terms "investigation" and "resignation."[1] Similarly no inquiry was made to determine what Attorney Sapienza meant when he testified that however the Act 168 Form was completed, the result would be problematic for the School District. Finally, there were no questions asked to shed light as to what possible conduct would be cause for concern when Mr. Sarandrea testified that there was concern if "anything would happen."

The Court notes that Plaintiffs' counsel's characterization of testimony is overstated. For example, the evidence at this stage does not support Plaintiffs' conclusory statement that Mr. Sarandrea "attempted to fix the blame on the Solicitor." Pltfs.' Br. Supp. 8. As can be seen from the testimony cited above, Mr. Sarandrea attempted to explain why he ultimately checked "Yes" on the Act 168 Form, in part by conveying that he and Attorney Sapienza carefully considered how to complete the Form. Mr. Sarandrea's testimony does not indicate that he was merely attempting to fix blame on Attorney Sapienza.

Likewise, the evidence available at this stage of the proceedings does not support Plaintiffs' counsel's characterizations of Attorney Sapienza's testimony as (i) "directly contradict[ing]" Mr. Sarandrea's testimony, and (ii) that Attorney Sapienza "indicated that he never advised anyone from the District relative to Act 168." Br. Supp. 5. The only relevant

---

[1] The parties' confidential settlement agreement may have foreclosed further questioning, however it is reasonable to assume that because the settlement agreement provided that Mr. Razzano voluntarily resign from employment, that fact was at a minimum on Mr. Sarandrea's mind when he became concerned about the term "resignation" in the Act 168 Form.

question to which Attorney Sapienza provided a response concerned his *recollection*. He was asked if he recalled consulting with an employee or representative of the School District regarding Act 168. Sapienza Dep. 7. He testified that he did not recall such a consultation; he did *not* testify that the meeting that Mr. Sarandrea referred to did not take place. Mr. Sarandrea testified that there was a meeting and provided detailed information that the two discussed the meaning of individual terms, considered what future events might transpire after the form was submitted, and weighed what effect the final response would have on the School District. Attorney Sapienza merely testified that he did not recall having a meeting with anyone about the Act 168 Form, and he was not able to respond to any further questioning due to the objections of counsel. As is shown by Mr. Sarandrea's testimony, further inquiry may refresh Attorney Sapienza's recollection, or other documents, such as the parties' calendars or meeting notes, may serve the same purpose.

Based on the above evidence the Court finds that Mr. Sarandrea implicated a defense of reliance on counsel, thereby placing at issue the Solicitor's understanding regarding Mr. Sarandrea's completion of the Act 168 Form. Martin Marietta, 227 F.R.D. 396-97. The attorney-client privilege is waived as to such communications with respect to the role the Solicitor's advice played in Mr. Sarandrea's decision to complete the Act 168 Form as he did. Plaintiffs' counsel is permitted to inquire of both Mr. Sarandrea and Attorney Sapienza as to the substance of any communications between them, concerning Mr. Sarandrea's completion of the Act 168 Form.

## IV. CONCLUSION

For the reasons stated above Plaintiffs' motion to compel testimony will be granted.

Dated: December 27, 2018                    s/*Marilyn J. Horan*
                                                       Marilyn J. Horan
                                                       United States District Court Judge

## **ORDER**

AND NOW, this 27th day of December, 2018, after careful consideration and for the reasons set forth in the Opinion accompanying this Order, it is hereby ORDERED that Plaintiffs' Motion to Compel testimony (ECF No. 56) is GRANTED.

IT IS FURTHER ORDERED that Discovery is extended to February 20, 2019, solely for deposing Mr. Sarandrea and Attorney Sapienza in accord with the above Opinion, as well as any necessary directly related discovery.

Pursuant to the Court's Order entered October 17, 2018, an Order setting Summary Judgment deadlines will be entered.

                                                                              s/*Marilyn J. Horan*
                                                                              Marilyn J. Horan
                                                                              United States District Court Judge