# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT RAZZANO and** | ) | |
| **BARBARA RAZZANO** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 17-1046** |
| | ) | |
| **JOHN SARANDREA and THE NEW** | ) | |
| **CASTLE AREA SCHOOL DISTRICT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

This lawsuit was brought by husband and wife Plaintiffs, Robert Razzano and Barbara

Razzano, against Defendants, the New Castle Area School District (the "School District") and

John Sarandrea, the Superintendent of the School District. The Razzanos' claims arise out of

Defendants' alleged defamatory statements on a statutorily required Pennsylvania state

disclosure form which was submitted to one of Mr. Razzano's potential educational employers.

Said statements occurred several years after Mr. Razzano voluntarily resigned from employment

with the School District. Mr. Razzano resigned during an investigation into allegations lodged

by School District employees against Mr. Razzano concerning his inappropriate conduct towards

adults.

Plaintiffs filed a First Amended Complaint on February 28, 2018, asserting four claims

against the Defendants. ECF No. 21. In Count I, Robert Razzano asserts a Defamation claim

against Defendant, John Sarandrea. In Count II, Mr. Razzano asserts a Fourteenth Amendment

Due Process claim, pursuant to 42 U.S.C. § 1983, against both Defendants. In Count III, Mr.

Razzano asserts a claim of Intentional Interference with Prospective Contractual Relations

against both Defendants.  Finally, in Count IV, Barbara Razzano asserts a Loss of Consortium claim against Mr. Sarandrea.  Pending before the Court are each of the parties' cross-motions for partial summary judgment as to Counts I, II, and III.  ECF Nos. 63, 67, & 72.  As more fully explained below, Plaintiffs' Motion for Summary Judgment will be granted with respect to Count I and denied with respect to Count II.  The School District's Motion for Summary Judgment will be granted as to Count II and Count III.  Mr. Sarandrea's Motion for Summary Judgment will be granted as to Count II.

## I.     BACKGROUND

Robert Razzano was hired as teacher by the New Castle Area School District in 1994. Robert Allen Razzano Dep. 5, Sept. 21, 2018.  In 1999, he was promoted to Assistant Principal for the Junior High School and the Senior High School.  *Id.*  In 2013, Mr. Razzano was promoted to Junior High School Principal, a position he held until his resignation on April 7, 2014.  *Id.* During the time Mr. Razzano was the Junior High School Principal, his supervisor was Defendant, John Sarandrea, the Superintendent of the School District.  John Sarandrea Dep. 5, Aug. 28, 2018.

In early 2014, Mr. Razzano was placed on administrative leave with pay, following allegations from other employees that Mr. Razzano had engaged in sexual harassment towards adults.  Razzano Dep. 7.  During the School District's investigation into the allegations, Mr. Razzano instituted an action in Mandamus in March, 2014, alleging that the investigation did not conform precisely to the District's Harassment Policy.  Am. Compl. ¶ 10, ECF No. 21.  In his Mandamus action, Mr. Razzano sought relief from certain aspects of the investigation.  *Id.* Thereafter, the parties entered into a confidential Settlement Agreement and Release of Mr.

Razzano's Mandamus lawsuit, resulting, in part, in Mr. Razzano's voluntary resignation from employment, effective April 7, 2014. Am. Compl. ¶¶ 11-12.

After his resignation from the School District, Mr. Razzano sought employment in administration or teaching in his chosen field of education. Mr. Razzano's job search overwhelmingly focused on Pennsylvania educational entities and involved direct contact with children. As part of the application process for such a position, and pursuant to an amendment to Pennsylvania's Public School Code, known as Act 168, before a potential employer may hire an applicant, the employer must require both the applicant and the applicant's former employer to submit a completed form to the potential employer, entitled "Commonwealth of Pennsylvania Sexual Misconduct/Abuse Disclosure Release" ("Act 168 Form"). 24 Pa. Stat. Ann. § 1-111.1(b); Am. Compl. ¶¶ 14,15; Razzano Dep. 38-39; Lyons Dep. 14-15. The Act 168 Form requires the applicant and the former employer School District to complete a form and to check either "Yes" or "No" in response to the following questions:

> To the best of your knowledge, has Applicant ever[] [b]een the subject of an abuse 'or sexual misconduct investigation by an employer, state licensing agency, law enforcement agency or child protective services agency (unless the investigation resulted in a finding that the allegations were false)?

> To the best of your knowledge, has Applicant ever[] [b]een disciplined, discharged, non-renewed, asked to resign from employment, resigned from or otherwise separated from employment while allegations of abuse or sexual misconduct were pending or under investigation or due to adjudication or findings of abuse or sexual misconduct?

Am. Compl. ¶15. As used in the Act 168 Form, "abuse" and "sexual misconduct" refer only to conduct involving a student or child. 24 P.S. §1-111.1(n). All parties agree that Mr. Razzano has never been the subject of an investigation of alleged "abuse" or "sexual misconduct" involving a student or a child. Am. Compl. ¶ 20; Sarandrea Answer, ¶ 20; School District

3

Answer, ¶ 20; Sarandrea Resp. to Pltfs.' First Set Req. for Admissions, ¶¶ 3, 6; Razzano Dep. 38; Sarandrea Dep. 66, 74-75.

In 2014, Mr. Razzano applied for an Assistant Principal position at North Allegheny School District, and for an administration position at Youngstown East School District, and for an administration position at Vincentian Academy, and for a position as a teacher/teacher evaluator at Slippery Rock University. Razzano Dep. 17-23. He was not hired for any of these positions; thus no Act 168 was submitted to the potential employers. In 2015, he applied for an Assistant Principal position at Laurel District High School, and for an Athletic Director position at South Side Beaver. Razzano Dep. 23-25. He did not obtain either of these jobs and no Act 168 was submitted to those potential employers.

In 2016, he applied to be the Athletic Director at Moon School District. Razzano Dep. 26-27. He was not hired, and he did not have to provide an Act 168 Form. Next, he was offered employment as a substitute teacher at the North Catholic High School (formerly Cardinal Wuerl). Razzano Dep. 27. Pursuant to Act 168, before North Catholic could hire Mr. Razzano, Mr. Razzano and his former employer the School District, had to submit completed Act 168 Forms to North Catholic. Razzano Dep. 29. The Act 168 Form was completed accurately by Mr. Sarandrea on behalf of the School District, wherein he answered "No" to the above two Act 168 questions. Razzano Dep. 29-31; Sarandrea Dep. 53, 57. Mr. Razzano was called to substitute from September 2016 through November 2016. Razzano Dep. 28.

In Winter 2016, Mr. Razzano applied to the Lawrence County Career and Technology Center for the position of Principal. Razzano Dep. 31-33. He was not hired, and no Act 168 Form was completed. In 2016, he was hired as a Behavior Specialist Counselor for Vocational Psychological Services, however, he was not required to provide an Act 168 Form for that

position. Razzano Dep. 33-36. Finally, in 2016, Mr. Razzano worked as a substitute teacher at two schools located in Ohio, Poland and Youngstown Area. The Ohio schools were not subject to Pennsylvania's Act 168 Form requirements. Razzano Dep. 36.

In February 2017, Mr. Razzano applied for employment as a substitute teacher at Kennedy Catholic High School ("Kennedy Catholic"). Razzano Dep. 36-37; William C. Lyon Dep. 12, Jan. 4, 2018. He was offered employment, and Kennedy Catholic requested and received the completed Act 168 Forms from Mr. Razzano and from the School District. 24 Pa. Stat. Ann. § 1-111.1(b)(1)(iii) & (b)(2)(ii). Mr. Razzano completed the Act 168 Form, correctly answering "No," to the above questions. Razzano. Dep. 38. However, Mr. Sarandrea incorrectly completed the Act 168 Form on behalf of the School District, by answering "Yes" to both above Act 168 questions. Razzano Dep. 41; Sarandrea Dep. 76; Sarandrea Resp. to Pltfs.' First Set Req. for Admissions, ¶¶ 4, 7; School District Resp. to Pltfs.' First Set Req. for Admissions, ¶¶ 4, 7. The School District's Act 168 Form, as completed by Mr. Sarandrea, was submitted to Kennedy Catholic on March 9, 2017. Sarandrea Resp. to Pltfs.' First Set Req. for Admissions, ¶ 9.

With regard to the Act 168 Form questions, Mr. Sarandrea testified as follows:

Q. [D]id you understand that for Act 168 purposes, including for this form that you were asked to fill out, that the term sexual misconduct meant an act directed toward or with a child or student?

A. Yes.

Q. Did you understand that for purposes of Act 168 and this form, the term abuse meant conduct directed toward a child or student.?

A. I did.

Sarandrea Dep. 74.  Regarding allegations involving Mr. Razzano, Mr. Sarandrea testified as

follows:

> Q. . . . [Y]ou knew that Mr. Razzano had never been accused of any misconduct
> involving a child or student?
>
> A. That's correct.
>
> Q. And he had never been accused of any sort of abuse or any other misconduct
> involving a child or student regardless of age?
>
> A. Correct.

Sarandrea Dep. 66.  Mr. Sarandrea also testified that he understood that "Robert Razzano had

never committed any act of misconduct of any kind nor any abuse toward a child or student," and

that Mr. Razzano had "never been alleged to have done so."  Sarandrea Dep. 74-75.  Mr.

Sarandrea's responses to these deposition questions confirm that his Act 168 Form submission to

Kennedy Catholic was a false official report.  The submitted form conveyed that Mr. Razzano

was either investigated for or was no longer employed because of allegations of "abuse" and/or

"sexual misconduct" involving a student or child.[1]  Sarandrea Resp. to Pltfs.' First Set Req. for

Admissions, ¶¶ 5, 8; School District Resp. to Pltfs.' First Set Req. for Admissions, ¶¶ 5, 8.

Mr. Razzano learned of Mr. Sarandrea's false Act 168 responses through his telephone

call with Kennedy Catholic's Principal, William Lyon.  Razzano Dep. 40-41; Lyon Dep. 18.  Mr.

Lyon told Mr. Razzano that the Act 168 Form completed by Mr. Sarandrea was "very bad," and

that as a result of the "Yes" responses, "there were some problems."  Razzano Dep. 41; Lyons

---

[1] Specifically, a "Yes" response to the first question constitutes a false official report that Mr. Razzano had been the subject of an investigation of alleged "abuse" and/or "sexual misconduct" involving a student or child.  A "Yes" response to the second question constitutes a false official report that Mr. Razzano had been disciplined, discharged, non-renewed, asked to resign from or otherwise separated from employment when allegations of "abuse" or "sexual misconduct" involving a student or child were pending against Mr. Razzano, or due to an adjudication finding that he had engaged in such "abuse" or "sexual misconduct."

Dep. 16.  Kennedy Catholic declined to employ Mr. Razzano because of Mr. Sarandrea's "Yes" responses on the Act 168 Form.  Lyon Dep. 16.

Mr. Razzano's attorney contacted the School District to rectify the incorrect responses on the Act 168 Form.  Lyon Dep. 18; Sarandrea Dep. 84, 87.  Thereafter, Mr. Sarandrea changed his "Yes" responses to "No," and submitted a corrected Act 168 Form to Kennedy Catholic on July 6, 2017.  Sarandrea Dep. 84, 87-89; Razzano Dep. 52, 54; Lyon Dep. 5, 16.  After receiving the revised Act 168 Form, Kennedy Catholic placed Mr. Razzano on the substitute teacher list on July 7, 2017.  Lyon Dep. 10.  Placement on Kennedy Catholic's substitute list does not guarantee substitute assignments, and Mr. Razzano was never called to substitute teach for Kennedy Catholic.  Lyon Dep. 17; Razzano Dep. 52.

In March 2017, Mr. Razzano was also offered a ninth-grade football assistant coaching position at Seneca Valley.  Razzano Dep. 54.  At the time of the offer, Mr. Razzano was aware that Mr. Sarandrea had recently submitted the false Act 168 Form to Kennedy Catholic.  He also knew that under Pennsylvania law in order to proceed with the hiring process, Seneca Valley would have to request the School District to provide it with a completed Act 168 Form.  At that time, Mr. Razzano believed an Act 168 Form would be incorrectly completed and submitted by Mr. Sarandrea.  Mr. Razzano believed that a false form would effectively bar his employment at Seneca Valley.  Razzano Dep. 54.  Accordingly, Mr. Razzano chose not to accept the Seneca Valley position at that time; he did not request the School District to submit an Act 168 Form to Seneca Valley.  After Mr. Sarandrea and the School District submitted a correct Act 168 Form to Kennedy Catholic, Mr. Razzano accepted the assistant coaching position at Seneca Valley, knowing that a correct Act 168 Form would be submitted to Seneca Valley.  Razzano Dep. 55.

Mr. Razzano was hired by Seneca valley, where he continues to work as a substitute teacher and as an assistant football coach. Razzano Dep. 56-58.

## II.      STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 578 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 322, 325; *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007). If the movant meets his or her burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex*, 477 U.S. at 323-25. The nonmoving party must go beyond his or her pleadings and designate specific facts using affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 260 (3d Cir. 1989). Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III.  DISCUSSION

Mr. Razzano seeks affirmative Summary Judgment of liability on his Defamation claim, Count I, and on his Fourteenth Amendment Due Process claim, Count II.  ECF No. 72.  Mr. Sarandrea and the School District move for Summary Judgment in their favor on Mr. Razzano's Fourteenth Amendment Due Process claim, Count II.  ECF Nos. 63 & 67.  Finally, Mr. Razzano concedes that the School District's Motion for Summary Judgment on his claim of Intentional Interference with Prospective Contractual Relations, Count III, should be granted.

### A.      Defamation, Count I

Mr. Razzano seeks judgment on liability as a matter of law for his Count I Defamation claim against Mr. Sarandrea.  Under Pennsylvania law, as set forth in 42 Pa. Cons. Stat. § 8343(a), a claim for defamation requires that the plaintiff prove the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

42 Pa. Cons. Stat. § 8343(a)[2]; *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014).  To obtain affirmative summary judgment, Mr. Razzano must establish each element of his claim. Mr. Sarandrea, as the non-movant, need only show that there is a genuine dispute as to at least one material fact to defeat summary judgment.  In this case, Mr. Sarandrea argues that there is a

---

[2] The Pennsylvania Statue has two additional elements that must be proved when applicable: "(6) Special harm resulting to the plaintiff from [the defamatory communication's] publication, and (7) Abuse of a conditionally privileged occasion."  42 Pa. Cons. Stat. § 8343(a).  Neither of these elements are applicable in this case.  "A plaintiff need not prove special harm when a statement is [as it is here] defamatory per se."  *McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 567 (3d Cir. 2003).  A plaintiff need only show "actual harm," which may include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 467 (Pa. Super. Ct. 1984).  The seventh element, abuse of a conditional privilege, is also not relevant as it has not been raised as an affirmative defense by Mr. Sarandrea. *Amer. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 396 (Pa. 2007).

genuine dispute concerning the defamatory character of the Act 168 communication. Mr. Razzano argues that Mr. Sarandrea's admitted false statements on the Act 168 Form are defamatory on their face and constitute libel per se.

Whether statements are defamatory as a matter of law is a question for the Court. *Pierce v. Capital Cities Commc'ns, Inc.*, 576 F.2d 495, 502 (3d Cir. 1978); *Corabi v. Curtis Publishing Co.*, 273 A.2d 899, 904 (Pa. 1971); *Fox v. Kahn*, 221 A.2d 181, 184 (Pa. 1966). A publication is defamatory if "'it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Graboff*, 744 F.3d at 136 (quoting *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001)). Mr. Sarandrea's false responses on the Act 168 Form were defamatory. Mr. Sarandrea has admitted that he understood the terms "sexual misconduct" and "abuse," as referenced in the Act 168 Form, meant an act or conduct directed towards a child or student. Sarandrea Dep. 74. He also testified that he knew Mr. Razzano had never been accused of any misconduct towards a child or student. Sarandrea Dep. 66. Finally, Mr. Sarandrea recognized that a "Yes" response to the Act 168 Form questions would reflect poorly on Mr. Razzano's character and conduct and would likely ruin his reputation. Sarandrea Dep. 78, 80. Through his incorrect "Yes" answers on the Act 168 Form, Mr. Sarandrea published false statements that Mr. Razzano had been accused of and investigated for "abuse" or "sexual misconduct" involving a child or student, and that he was disciplined or separated from his employment as a result of such circumstances. In addition, since Mr. Sarandrea's Act 168 form answers, submitted to Kennedy Catholic and Mr. Lyons, were opposite of what Mr. Razzano had answered on his Act 168 Form submission, it appeared as though Mr. Razzano had lied on his Act 168 Form.

In response, Mr. Sarandrea argues that judgment as a matter of law is not appropriate at this stage, because there are disputed issues of material fact as to the defamatory nature of the statements. Sarandrea Br. Opp. 3-4. He generally claims that the record is unclear "regarding what Sarandrea knew and/or understood at the time he filled out the Act 168 Form" in order to establish why he answered the questions in the affirmative. *Id.* 4. He also refers to unidentified "inconsistent statements by Sarandrea" cited by Mr. Razzano. *Id.* However, Mr. Sarandrea does not identify any disputed issue of material fact or provide any citation to record evidence to support his argument. *Corliss*, 247 F. App'x at 354 (non-movant "may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant'"). Presently, the record evidence is consistent to show that Mr. Sarandrea gave knowing false responses on the Act 168 Form. Mr. Sarandrea's unequivocal deposition testimony explained his affirmative and knowingly false responses on the Act 168 Form. As such, there is no need to weigh evidence, make credibility determinations, or conduct fact-finding. Mr. Sarandrea's knowingly false statements on the Act 168 Form were defamatory on their face.

The remaining elements, two through five, are satisfied by the undisputed record evidence. Mr. Sarandrea intentionally "published" the statements by providing the false Act 168 Form to Kennedy Catholic and Mr. Lyons. The statements specifically referenced and related to Mr. Razzano. The recipient of the statements, Kennedy Catholic and Mr. Lyons, understood the defamatory meaning of the statements and that they related to Mr. Razzano. The record also supports that Kennedy Catholic did not offer Mr. Razzano employment because of the defamatory statements.

Viewing the record evidence in a light most favorable to Mr. Sarandrea, the Court finds that Mr. Razzano has demonstrated that there is no genuine dispute of material fact. Judgment on liability on his Count I Defamation claim is warranted, as a matter of law. Mr. Razzano's Motion for Summary Judgment will be granted as to Count I. Accordingly, judgment on liability on Mr. Razzano's Defamation claim will be entered in favor of Mr. Razzano and against Mr. Sarandrea.

### B.      42 U.S.C. § 1983 Due Process Claim, Count II

In Count II, Mr. Razzano claims that Defendants' publication of defamatory statements on the Act 168 Form satisfies the elements of a "stigma plus" claim under the Due Process Clause of the Fourteenth Amendment because it caused damage to his reputation plus a deprivation of another protectible right or interest. The United States Supreme Court has held "that a person has a protectible interest in reputation." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). However, the Supreme Court clarified that, reputation alone is not an interest "sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976). In *Paul*, the Supreme Court explained that a plaintiff's interest in his reputation was "one of a number which the State may protect against injury by virtue of its tort law," and that injury to a person's reputation "does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." *Id*. at 712. "Thus, the *Paul* Court held that the plaintiff could not maintain his § 1983 claim predicated purely on reputational harm." *Hill*, 455 F.3d at 236.

Instead, to set forth a viable "due process claim for a deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (emphasis in original) (citing *Paul*, 424 U.S. at 701). "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236 (internal citations omitted).

"The second, or 'plus,' requirement refers to the additional deprivation needed to transform a stigmatizing statement into a § 1983 claim." *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110, 113 (3d Cir. 2014). In a public employment relationship, the "plus prong is typically termination of employment." *Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014); *Hill*, 455 F.3d at 236 ("'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest" (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Hill*, 455 F.3d at 236.

Mr. Razzano may satisfy the "plus" prong so long as his reputational damage "occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *D & D Assocs.*, 552 F. App'x at 113 (citing *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989)). A "property interest that independently enjoys due process protection constitutes a sufficient 'plus.'" *Burns v. Alexander*, 776 F. Supp. 2d 57, 80 (W.D. Pa. 2011). Mr. Sarandrea and the School District both argue that Mr. Razzano's Section 1983 due process claim must fail, because it is predicated solely upon harm to his reputation,

14

with no additional "plus" deprivation. Mr. Razzano argues that he meets the "plus" prong in two ways. First, he contends that Defendants' stigmatizing statements constitute an alteration of his status under Pennsylvania law that effected a change or extinguishment of his career-related protected liberty and property interests to pursue a calling or occupation. He argues that the change of status acted to effectively deprive him of his teaching certificate and effectively precluded him working in his chosen field. Additionally, he argues that, because the Pennsylvania Constitution protects the right to reputation, the stigma causing him reputational harm supplies the requisite "plus" prong in and of itself.

### 1.    Career-Related Liberty and Property Interests

The United States Court of Appeals for the Third Circuit has recognized that "the liberty to pursue a calling or occupation . . . is secured by the Fourteenth Amendment." *Thomas v. Indep. Twp.*, 463 F.3d 285, 297 (3d Cir. 2006). "The Supreme Court has also observed that, at least in some contexts, individuals have constitutionally-protected property interests in 'state-issued licenses essential to pursuing an occupation or livelihood.'" *Burns*, 776 F. Supp. 2d at 81 (quoting *Cleveland v. United States*, 531 U.S. 12, 25, n. 4 (2000)). Mr. Razzano argues that he was effectively barred in Pennsylvania from securing employment involving direct contact with children in his chosen field because no employer would hire him in light of the defamatory Act 168 statements. In addition, he contends that the defamatory Act 168 Form effectively suspended or revoked his teaching certificate. Therefore, he argues that, in addition to the "stigma" reputational harm he suffered, he also suffered the "plus" deprivation of his protected interest to pursue a calling or occupation.

### a. Stigma Prong

To satisfy the 'stigma' prong, the defamatory statements must be false and made publicly. *Hill*, 455 F.3d at 236. It is undisputed that Mr. Sarandrea's statements were false and defamatory on their face. Said statements were stigmatizing in that they had the effect of damaging Mr. Razzano's "good name, reputation, honor, or integrity." *Ersek v. Twp. Of Springfield*, 102 F.3d 79, 83 (3d Cir. 1996). In addition, it is undisputed that the single false Act 168 Form in was published to Kennedy Catholic and Mr. Lyons. Thus, the false Act 168 Form temporarily precluded Mr. Razzano's employment for the single substitute Kennedy Catholic teaching position. However, there is no constitutionally recognized protected right to a specific job prospect as "state actions that exclude a person from one particular job are not actionable in due process claims." *Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 F. App'x 135, 141 (3d Cir. 2010) ("it is the liberty interest to pursue a calling or occupation, not the right to a specific job, that is secured by the Fourteenth Amendment"); *see also Piecknick v. Pennsylvania,* 36 F.3d 1250, 1259 (3d Cir.1994) (same).[3] Hence, Mr. Razzano cannot establish a due process violation based on the Defendants actions that temporarily excluded him from the Kennedy Catholic job.

In addition, where the false statements are not publicly made, a due process claim fails to satisfy the stigma prong. *Bishop v. Wood*, 426 U.S. 341, 348 (1976). Here, there is no evidence

---

[3] Mr. Razzano recognizes that he does not have a viable due process claim based solely on the harm to his reputation that occurred with his Kennedy Catholic application as he does not argue that he had a constitutionally protected right or interest in the Kennedy Catholic job. *See Bosco v. Pittsburgh Bd. of Pub. Educ.*, No. 2:16CV1264, 2019 WL 4736959, at *9 (W.D. Pa. Sept. 27, 2019) ("protections afforded to the liberty interest through the Fourteenth Amendment do not extend to a specific job"). In addition, he clarifies that his argument is, that he was effectively foreclosed from pursuing his profession. Pltfs.' Br. Opp. 5. Therefore, the focus of his argument is on the effect the false statements have on his future ability to pursue his chosen profession.

that the Defendants published or disseminated any false statements beyond the single Act 168 Form.[4] There is no evidence of any publication of the Kennedy Catholic Act 168 Form to any other potential employer or to the public. *Bosco v. Pittsburgh Board of Public Education,* No. 2:16CV1264, 2019 WL 4736959, at *6 (W.D. Pa. Sept. 27, 2019). Thus, Mr. Razzano cannot establish the defamatory Act 168 Form was publicly made, and the stigma element is not met. Therefore, since Mr. Razzano cannot establish the stigma element the Defendants are entitled to summary judgment.

### b. Plus Prong

As regards the plus prong, Mr. Razzano argues that he can establish the plus prong because Act 168 requires prospective employers to solicit and consider Act 168 Form responses from prior employers. 24 Pa. Stat. Ann. §§ 1-111.1(b)(1)(iii) & (b)(2)(ii); (d)(2). He argues that Mr. Sarandrea's false Act 168 statements to Kennedy Catholic erected a literal statutory bar and prevented prospective employers from hiring him in his chosen occupation, which thereby altered his legal status. Pltfs.' Br. Supp. 21-22; Pltfs.' Reply Br. 7. Mr. Razzano's argument assumes that, because the Defendants submitted one false Act 168 Form, they would also falsely submit other Act 168 forms to future potential employers. There is no evidence to support Mr. Razzano's assumption or argument.

Mr. Razzano has not shown that the Kennedy Catholic false Act 168 Form had any impact on his ability to obtain other employment within his chosen field. Between 2014 through 2017, before he applied to Kennedy Catholic, he had applied for seven administrative positions

---

[4] The Pennsylvania law mandating prospective employers to obtain an Act 168 Form from prior employers protects such information from public disclosure by providing that "[i]nformation received under this section *shall not be deemed a public record* for the purposes of the act of February 14, 2008 (P.L. 6, No. 3), known as the "Right-to-Know Law." 24 Pa. Stat. Ann. § 1-111.1(b)(4)(i) (emphasis added).

and four teaching/counseling positions. From these applications he was hired for three substitute teaching positions and for a counseling position. Three of those positions did not require an Act 168 Form. Such establishes that Mr. Razzano could obtain a position in his chosen field even without any Act 168 form submission. For the one position for which an Act 168 form was required, Defendants submitted an accurate Act 168 Form. As regards the March 2017 Kennedy Catholic false Act 168 Form such was subsequently corrected and resubmitted to Kennedy Catholic on July 6, 2017. Thereafter, Mr. Razzano was hired by Kennedy Catholic as a substitute teacher. For the Seneca Valley coaching position, Mr. Razzano did not pursue submission of the Act 168 Forms until after the issue of the false form was resolved. Thus, he cannot show that the Kennedy Catholic false Act 168 Form impacted any Seneca Valley hiring decision. Mr. Razzano chose to delay accepting the Seneca Valley position, until after July 6, 2017 in order to prevent the Act 168 Form process. Thus, at best, the single false Kennedy Catholic Act 168 Form resulted in Mr. Razzano's decision to delay accepting the Seneca Valley coaching position. Such result does not constitute an alteration in his legal status.

Moreover, the false Act 168 Form has not prospectively hampered Mr. Razzano's ability to pursue his profession. The defamatory Act 168 Form did not and has not statutorily barred him from pursuing a position in education. He has maintained his teaching certificate. He can apply for educational positions involving direct contact with children. Further, when Defendants were contacted about the falsity of the March 2018 Act 168 Form, the Defendants submitted a corrected Form in July 2018. Thus, the statutory opportunity for Mr. Razzano to explain the circumstances of his resignation from the School District,[5] combined with the Defendants' Act

---

[5] *See* 24 Pa. Stat. § 1-111.1(d)(3)(i) & (ii).

18

168 Form correction resulted in a positive employment decision. It did not effectively "eclipse all of his future opportunities to secure employment in the educational field." *Bosco*, 2019 WL 4736959, at *10. Therefore, Mr. Razzano's argument fails to satisfy the "plus" prong.

Mr. Razzano also argues that, based upon the rulings in *Valmonte v. Bane* and *Burns v. Alexander*, the publication of the defamatory Act 168 Form statutorily impaired his ability to seek employment in his chosen field. *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Burns*, 776 F. Supp. 2d 57. In the *Valmonte* and *Burns* cases, each respective plaintiff was falsely labeled as an indicated child-abuser; and, by operation of each plaintiff's respective state law, each plaintiff's name was required to be listed in the state-created central registry. In those states, all prospective employers are statutorily required to consult that state's central registry for any listing of a prospective employee as either an indicated or founded child abuser. In both cases, each plaintiff's status was found to have been altered by operation of law when said plaintiff was listed in the central registry. Every time a prospective employer consulted the Central Register, as required by law, a potential employee's false status as a child abuser was published to the employer. Thus, each plaintiff's status and ability to obtain future employment in her respective profession was altered when she was listed on the central registry. Such is not the circumstance or result in Mr. Razzano's case, as there was no public publication beyond the single false form to a single potential employer, Kennedy Catholic. Further, the false report was not published to any required central registry. As such, neither the *Valmonte* nor the *Burns* case support Mr. Razzano's argument. Thus, Mr. Razzano's status was not altered as a result of the false Act 168 Form.

Mr. Razzano did not suffer a state-created "alteration of [his] legal status" in addition to the injury resulting from defamation. *Paul*, 424 U.S. at 708. Mr. Razzano retained his teaching

certificate, his name was not placed in a central register, and the defamatory information was not, and would not be, generally published in a manner accessible to prospective educational employers, other than the single employer, Kennedy Catholic, in this case. Mr. Razzano was deprived of the Kennedy Catholic prospective job employment opportunity for a limited time period, from March 2017 until July 2017. *Simpson*, 500 F. App'x at 188. The temporary loss of one job prospect, and Mr. Razzano's self-imposed limitation to delay pursuing job application opportunities until the false Act 168 Form information was corrected, did not involve any separate Constitutionally protected liberty or property interest. Therefore, the Court finds that Mr. Razzano does not meet the "plus" prong to establish a Fourteenth Amendment right and claim under Section 1983.

Mr. Razzano also relies on *Marrero v. Hialeah*, 625 F.2d 499 (5th Cir. 1980) to support his argument that reputation alone is sufficient to establish the plus prong. The result in *Marrero* was decided through the application of the stigma plus test analysis. In *Marrero*, city police officers executed a search warrant at a retail jewelry store, and later made false and defamatory statements to the media regarding alleged stolen property, which plaintiffs claimed damaged their personal and business reputations in violation of the Fourteenth Amendment. *Id.* at 502. The United States Court of Appeals for the Fifth Circuit concluded that the resulting injury to the business reputation, or "goodwill," was sufficient to satisfy the "plus" prong of the test, because applicable Florida state law recognized business reputation, "good will," as a property interest. *Id.* at 514-15.

The *Marrero* decision did not conclude that a section 1983 claim was properly stated based *solely* on the stigma to the plaintiff's personal reputation. The *Marrero* Court did not find that the "plus" prong was satisfied solely by the "stigma" to the plaintiffs' reputation. The

*Marrero* Court relied on Florida law that recognizes a business's goodwill as a property interest. *Marrero*, 625 F.2d at 514 ("Although Florida law may not recognize personal reputation as a liberty or property interest, it does recognize business reputation, at least to the extent it approximates goodwill, as a property interest."). The *Marrero* Court's ruling is in accord with the *Paul* ruling "that a liberty interest will be implicated if the defamation, in *addition to injuring reputation*, causes the loss of either a protected right or some 'more tangible' interest." *Marrero*, 625 F.2d at 515 (emphasis added) (citing *Paul*, 424 U.S. at 512-13 & n.17). As stated by the *Marrero* Court:

> Here, at least some of the defamatory statements are alleged to have resulted in injury *not only* to appellants' personal and business reputations, *but also* to the goodwill of appellants' business, which, as we have determined, is a protected property interest.

*Marrero*, 625 F.2d at 515–16 (emphasis added). In *Marrero*, the Section 1983 claim survived because the distinct "plus," was the plaintiffs' business goodwill property interest. Mr. Razzano does not establish that he has any similar property or liberty interest distinct from the harm to his reputation.

## 2. Right to Reputation Guaranteed Under the Pennsylvania Constitution

Mr. Razzano argues that he satisfies the "plus" requirement because the false Act 168 Form harmed his right to good reputation, as guaranteed under the Pennsylvania Constitution. The Pennsylvania Constitution provides in relevant part as follows:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, §1. Mr. Razzano argues that because Pennsylvania provides independent

protection of its' citizens' right to reputation, "the stigma and reputational harm inflicted upon

Mr. Razzano supplies the requisite 'plus' in and of itself." Pltfs.' Br. Supp. 16.

First, several District Courts in the Third Circuit have considered and rejected similar

arguments. *See Koresko v. Solis,* No. CIV.A. 09-3152, 2011 WL 5447435, at *5–6 (E.D. Pa.

Nov. 10, 2011) (collecting cases[6]); *see also Carusone v. Kane,* Civil No. 1:16-cv-1944, 2017 WL

5188291, at *6 n. 4 (Nov. 9, 2017) (citing *Koresko).*[7] "That a right to one's reputation is

recognized in the state constitution does not confer federal substantive due process protection."

*Austin v. Neal,* 933 F. Supp. 444, 456 (E.D. Pa. 1996) (citing *Puricelli v. Borough of*

*Morrisville,* 820 F. Supp. 908, 914 (E.D. Pa. 1993). "Federal substantive due process rights are

---

[6] In *Koresko v. Solis,* the Court cited the following cases: *Moiles v. Marple Newtown Sch. Dist.,* No. 01–4526, 2002 WL 1964393, at *10 n. 14 (E.D. Pa. Aug.23, 2002) (concluding that allegations invoking the Pennsylvania Constitution's right to reputation fail to meet the "stigma-plus" standard); *Manion v. Sarcione,* 192 F.Supp.2d 353, 356 (E.D. Pa. 2001) (finding that favored status under Pennsylvania law does not secure a property interest in one's reputation for purposes of the Fourteenth Amendment); *Gross v. Taylor,* No. 96–6514, 1997 WL 535872, at *14 n. 7 (E.D. Pa. Aug.5, 1997) (rejecting an attempt to distinguish *Paul* on the grounds that Article I, Section 1 of Pennsylvania's Constitution elevates the protection for reputation above simple tort actions); *Puricelli v. Borough of Morrisville,* 820 F.Supp. 908, 914 (E.D. Pa. 1993); *Garner v. Township of Wrightstown,* 819 F.Supp. 435, 441 (E.D. Pa. 1993); *Lee v. Mihalich,* 630 F.Supp. 152, 155 (E.D. Pa. 1986)).

[7] The Court acknowledges that in *Sullivan v. State of N.J., Div. of Gaming Enf't,* 602 F. Supp. 1216, 1223 (D.N.J. 1985), the District Court opined that "[i]f a state recognizes reputation as a liberty interest or property right, then the very act of defamation itself infringes on the right and is actionable under § 1983 if performed under color of state law." The District Court further stated that in such a case, "the 'stigma' itself supports the cause of action, so that there is no need to go into 'stigma-plus' analysis or to determine whether state action was involved with the 'plus.'" *Id.* In *Sullivan,* there was "no contention that reputation in itself has the status of a property right or liberty interest," and thus the District Court's statements are dicta. Moreover, had the District Court faced the issue directly it would have had to reconcile its dictum with its conclusion that:

> If plaintiff only has to show that the state defamed him—and not that the state did something else
> as well—in order to state a claim for deprivation of liberty under § 1983, the effect would be to
> transmute all defamation actions against state actors in which plaintiff can show some harm
> resulting from the defamation into § 1983 actions. This is clearly in conflict with the intent of
> *Paul,* which explicitly warns against turning the Fourteenth Amendment and § 1983 into "a font of
> tort law to be superimposed upon whatever systems may already be administered by the States."

*Id.* at 1223 (quoting *Paul,* 424 U.S. at 701). In addition, as set forth in the text of this Opinion, numerous District Court's in this Circuit have rejected the argument that reputation alone is enough to state a Section 1983 claim.

created by the U.S. Constitution and federal substantive due process protection is accorded only to fundamental interests derived from the federal Constitution." *Id.* In *Manion v. Sarcione,* the plaintiff argued that "reputation is specifically protected by the state constitution, . . . giving the reputation of Pennsylvanians a protected status under the Fourteenth Amendment." 192 F.Supp.2d 353, 356 (E.D. Pa. 2001). The District Court noted that although "the Pennsylvania Supreme Court has declared that reputation is in 'the same class with life, liberty, and property,'" the Pennsylvania Supreme Court "clearly understood that it is a right distinct from the rights of life, liberty, and property which are all separately enumerated in the Pennsylvania Constitution." *Manion*, 192 F.Supp.2d at 356 (quoting *Meas v. Johnson*, 185 Pa. 12, 39 A. 562, 563 (1898)). The *Manion* Court explained that the Fourteenth Amendment to the United States Constitution

> only protects against deprivation of life, liberty, and property. It makes no mention of reputation. Thus, even with the elevated protection that reputation seems to be afforded in the Commonwealth, this favored status in and of itself does not secure reputation alone under the Fourteenth Amendment.

Manion, 192 F. Supp. 2d at 356.

Moreover, the Supreme Court's holding in *Paul*, that there must be a "plus" to establish a constitutional claim, necessarily means that impairment of reputation alone is never enough, in part, because it cannot be separate enough from the original stigma to qualify as a separate right or interest affected by the defamatory action. In a later case, reaffirming *Paul's* holding that injury to reputation alone is not a protected "liberty" interest protected under the Fourteenth Amendment, the Supreme Court explained that, "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Here, Mr. Razzano's Count I Defamation claim is a tort compensable under Pennsylvania law; but it does not establish a constitutional deprivation. Therefore, based upon

United States Supreme Court precedent, when reputation alone is the injury, there is no alteration of an "additional right or interest" sufficient to establish a Constitutional violation.

A plaintiff must show a stigma to his reputation, plus some concomitant deprivation of an additional right or interest. According to *Paul*, the "plus" must be something other than the stigma resulting from the defamatory statement. Therefore, despite Pennsylvania's reference to reputation in its Constitution, reputational harm alone is not enough to supply both the "stigma" and the "plus" prongs to sustain a Section 1983 Due Process claim.

Based on the foregoing discussion, Mr. Razzano cannot establish the additional deprivation of a constitutionally protected right or interest, thus his Section 1983 due process claim is insufficient as a matter of law. Accordingly, Mr. Razzano's Motion for Summary Judgment will be denied as to Count II. Mr. Sarandrea's and the School District's Motions for Summary Judgment will be granted with respect to Count II.

C.     **Intentional Interference with Prospective Contractual Relations, Count III**

As noted, Mr. Razzano concedes that the School District's Motion for Summary Judgment on Mr. Razzano's claim of Intentional Interference with Prospective Contractual Relations should be granted. Accordingly, the Court will grant the School District's Motion and grant Judgment on Count III in favor of the School District and against Mr. Razzano.

## II.   CONCLUSION

Summary judgment as a matter of law will be granted in favor of Mr. Razzano and against Mr. Sarandrea as to liability only on Mr. Razzano's Count I Defamation Claim. Judgment will be granted in favor of Mr. Sarandrea and the School District on Mr. Razzano's Count II, Section 1983 Due Process Claim. Judgment will be granted in favor of the Defendants and against Mr. Razzano. Finally, the School District's Motion for Summary Judgment will be

24

granted in favor of the School District as to Count III, Intentional Interference with Prospective Contractual Relations. Judgment will be granted in favor of the Defendant, School District, and against Mr. Razzano.

The claims which remain for further proceedings are Mr. Razzano's Count I Defamation for damages against Mr. Sarandrea; Mr. Razzano's Count III, Intentional Interference with Prospective Contractual Relations claim against Mr. Sarandrea; and Count IV, Barbara Razzano's loss of consortium claim against Mr. Sarandrea.

An appropriate order will be entered.

.

Dated: December 23rd 2019

Marilyn J. Horan
United States District Court Judge